ROYAL CALL vs. OTIS ALLEN.

*St.* 1845, *c.* 197, § 2, regulating the use of steam-engines and furnaces, applies to works subsequently erected, as well as to those existing at the time of its passage.

In a suit in equity, in which the plaintiff seeks to recover damages for a nuisance to his buildings, arising from the unlawful erection and maintenance of steam-engines and furnaces, as well as for an injunction to prevent their further continuance, evidence of the general character of the neighborhood in which his buildings are situated, of the various kinds of business carried on there, and of the class of tenants by whom dwelling-houses in that vicinity are usually occupied, is competent, upon the question of damages; but evidence that a particular insurance company had increased the rate of insurance on his houses is incompetent.

If the use of steam-engines and furnaces has been regulated by an order of the municipal authorities, duly made and recorded, under *St.* 1845, *c.* 197, the burden is on a party who complains of the works as a nuisance to prove a non-compliance with the terms of the order, or an unlawful or improper use of the works.

BILL IN EQUITY alleging the existence of a nuisance, consisting of steam-engines, furnaces, saw-mills, planing-mills and carpenter shops, owned and maintained by the defendant in the neighborhood of the plaintiff's houses, and seeking to recover damages resulting therefrom, and praying for an injunction to prevent their further maintenance.

The answer admits the existence of the works, but denies that they are a nuisance; and also pleads in justification an order of the mayor and aldermen of the city of Lowell, dated June 3 1853, and passed under the authority of *St.* 1845, *c.* 197, regulating the use of steam-engines and furnaces.

The cause was tried to the jury upon issues framed by the court, and they returned a verdict for the defendant; and at the same time, by the direction of the court, made answer in writing to the issues, finding that the works complained of were erected, maintained and used after the passage of the statute referred to.

At the trial in this court, before *Merrick*, J., it appeared that the buildings of the defendant were in very close proximity to the plaintiff's houses; and there was evidence tending to show that the noise thereof was very great, and was a great annoyance to the people occupying the houses, and that they left them

12 *

on that account; that the houses were greatly endangered by the falling of lighted cinders from the defendant's chimneys, and that the plaintiff was unable to effect any insurance upon some of them by reason thereof; that the plaintiff himself occupied one of them, and was frequently prevented from sleeping by reason of the noise of the mills in the night-time, and was otherwise greatly annoyed thereby.

The defendant asked various witnesses, " whether Norcross's Mills (works of a kind similar to those of the defendant) were not about one half mile distant from the plaintiff's estate ; whether Brooks's Mill and the Mechanics' Mills were not just opposite, on the other side of the canal; whether Sargent's Mills were not about one third of a mile off; whether business of the kind complained of was not principally carried on in that neighborhood; whether there was not a railroad near by, with two large freight depots, and also a large wood-yard; whether there was not a large foundery a quarter of a mile off; and whether the men living in that neighborhood were not principally manufacturers ? " To these questions, as they were severally asked, the plaintiff objected, as irrelevant and immaterial; but the court allowed them to be asked, and they were answered in the affirmative.

E. F. Sherman, secretary of a fire insurance company, was called by the plaintiff, and testified that the plaintiff had some of the houses described in his bill insured at their office. The plaintiff then asked him whether or not the company had, on account of the existence of the defendant's works, increased the rate of insurance on the plaintiff's houses? To this question the defendant objected, and the court excluded the evidence.

The plaintiff claimed, as one element of damage, that the said nuisance had been the cause of his losing good and reliable tenants, and that he had been compelled to let his houses to a less desirable class of tenants. The defendant introduced evidence, under objection, that if his works were stopped the value of the plaintiff's real estate would be reduced; and that the mechanics, who were the class of tenants occupying the plaintiff's houses, would remove from that vicinity.

The defendant offered in evidence the order of the mayor and aldermen of Lowell, regulating the use of the works complained of. The plaintiff objected to this evidence, as being no justification for the maintenance of the works; and requested the court to rule that the statute, in accordance with which the order purported to have been passed, did not provide for the passage of such an order in the defendant's case, inasmuch as the engines, furnaces and mill were erected without a license after the statute took effect; and that the defendant's works, having been so erected without a license, were, by force of the statute, a common nuisance; but the court refused so to rule, and admitted the order in evidence as a justification for the maintenance of the works.

The plaintiff contended, and asked the court to rule, that unless the defendant satisfied the jury that he had complied with the terms of the order, the works should be deemed and taken to be a common nuisance; and that the burden was on the defendant to show such compliance. The court refused so to rule; but instructed the jury as follows, viz: " That the 197th chapter of the statutes of 1845 made the mayor and aldermen of cities the proper tribunals to decide the question, whether works of the description of those complained of were a nuisance, and also to decide upon the fitness of the locality of the same; that if the mayor and aldermen should grant a license or pass an order like the one in evidence, which was in effect a license, then, in order to sustain a complaint that such works were a nuisance, the burden was on the party complaining to prove a non-compliance with the terms of such license or order; that the mayor and aldermen of Lowell, if they thought proper, had a right under the statute to grant the order aforesaid, and that the order had the effect of a license to the defendant to maintain the works; that if the mayor and aldermen decided the place for the works to be fit and lawful, then it was fit and lawful for them to be there; that the plaintiff was bound by their decision, and the works were not, by force of the statute, a common nuisance on account of having been erected without a license; that the burden was on the plaintiff, who claimed

Call *v.* Allen.

them to be a nuisance, to prove either that the defendant had not complied with the terms of the order, or that the works were carried on in an unlawful and improper manner; that if the works were lawfully there and lawfully carried on, the plaintiff had no legal cause of complaint, though his houses were thereby made less agreeable or more exposed, or if he were obliged on account thereof to pay a higher rate of premium of insurance."

The plaintiff alleged exceptions.

*E. Ripley*, for the plaintiff, cited, as to the questions of evidence, *Palmer Co.* v. *Ferrill*, 17 Pick. 58; *Shattuck* v. *Woods*, 1 Pick. 175; *Stetson* v. *Faxon*, 19 Pick. 147.

*B. F. Butler & W. P. Webster*, for the defendant.

MERRICK, J.* Upon the trial of the issues submitted to the jury, it appeared that the buildings, steam-engines and furnaces mentioned and complained of in the bill were erected, maintained and used subsequent to the passage of the statute for the regulation of mills and works of that character. In justification of his continuing in the operation of his mills, and to show that he had a lawful right to do so, the defendant offered in evidence an order of the mayor and aldermen of the city of Lowell, prescribing certain alterations in the buildings, and making other provisions in relation to the manner in which the business therein should thereafter be conducted and carried on. This was objected to by the plaintiff; but it was admitted by the court. And the jury were instructed that this order was, in legal effect, a license to the defendant to maintain and continue his works in operation in the place where the buildings were standing, upon the terms and conditions and subject to the restrictions and limitations prescribed in it.

To this instruction, and to the legal validity of the order, it is objected that the mayor and aldermen had no authority under the statute to make or cause it to be recorded. If they had such authority, it is not claimed that, in the proceedings in rela-

---

* HOAR, J. did not sit in this case.

tion to it, there was any error or irregularity. But the plaintiff contends that, under the statute, municipal officers of towns and cities were empowered to prescribe alterations, or make other provisions in reference to the use of those engines and furnaces only which had been erected before its passage ; or to grant, upon written application for that purpose, a license for the use of such as should be erected subsequently to the application. If this proposition be admitted to be correct, it necessarily follows that the use of all furnaces and steam-engines erected after the passage of the. act, without a previously obtained license therefor, is in effect forever prohibited, because no means can be afterwards resorted to by the owners to make it lawful. But it seems to us very clear that no such position can be sustained.

The statute is entitled " An act regulating the use of steam-engines and furnaces " ; and all its provisions, duly considered and compared with each other, distinctly indicate the intention of the legislature to make it applicable to all buildings in which such works are placed, at whatever period of time they may have been erected, and whenever or wherever they shall be used. *St.* 1845, *c.* 197.

This is apparent from the declared object intended to be effected by it. This is to secure all classes of the community from exposure to annoyances which might arise from particular kinds of business, when managed and conducted in an unreasonable or noxious manner. The provisions of the statute are accordingly limited to " furnaces used for melting of iron, and stationary steam-engines designed for use in any mill for the planing or sawing of boards, or turning of wood of any kind, or when any other fuel than coal is used to create steam." § 1. For other purposes they are presumed to be capable of use without occasioning either public or private inconvenience ; and therefore, in such cases, they are not subject to any regulation by public authority. But as to those particularly specified, it is declared that if used without license, or contrary to the provisions of the act, they shall be deemed and taken to be common nuisances. § 3. And in such cases the mayor and aldermen of

cities and the selectmen of towns are authorized to require their owners, under a prescribed penalty, to remove them in twenty four hours after notice ; and upon failure of compliance with the order, to remove them at their expense. § 4. Rev. Sts. *c.* 21, §§ 10, 11.

The object of the legislature being to regulate for the common welfare, and not wholly to prohibit, the use of all such furnaces and engines, its provisions are sufficiently broad and comprehensive to effect it. After providing in § 1 that none shall thenceforward be erected except under a license previously obtained, it proceeds to prescribe the course of proceeding to be had in relation to those " heretofore erected or in use." There are obviously two classes : first, those erected before the enactment of the statute ; and, secondly, those in actual use when the authorized municipal officers are called upon to exercise their power and office respecting them. As to this last class, it is wholly immaterial when they were erected. It is sufficient that the engines or furnaces are in fact in actual use and operation. That gives to the mayor and aldermen of cities and the selectmen of towns jurisdiction ; and they may exercise it to the full extent of the power conferred on them by the statute.

This power being vested in those officers, it is an inevitable implication from its exercise in making and recording an order prescribing rules, restrictions, and alterations as to the building in which the furnace or engine is constructed, and other provisions for the safety of the neighborhood, that the owner may thereafter, by conforming to and observing all the terms and requirements of the order, lawfully continue to maintain, use and work them. The same conclusion is also deducible from other parts of the statute. If the owner is aggrieved by the order, he is allowed to apply for and submit the whole matter to a jury, by whom the order may be altered, affirmed or annulled. And then it is provided that if such application is made, the superior court or any of its justices may, in its or his discretion, issue an injunction against the further use of the engine or furnace, until a final determination is made by the court in which the verdict is returned. §§ 6, 7. Gen. Sts. *c.* 88,

§ 37.   The conclusion from these provisions is direct and una-voidable, that where no injunction is issued, and also after a final determination upon the order, the owner may lawfully con-tinue the use of them at his pleasure.   This is equivalent to and in substance and effect is nothing less than a license, under which his right to such use is clearly confirmed to him.   ·

It was under § 2 of the statute that the proceeding before the mayor and aldermen of the city of Lowell, relative to the mills and steam-engines of the defendant, then in actual use and operation, which resulted in the order of the 3d of June 1853, took place.   As they had full authority to act upon the subject, their determination and order, not having been objected to or appealed from, were final and conclusive upon the rights of all parties relative to all matters involved therein.   The fur-ther prosecution of his business by the defendant, by the use of his engine, was lawful; and his mills and works could afterwards be justly complained of only when he should fail in any re-spect to comply with the requirements of the order, or should act contrary to or in violation of its provisions.   He who would charge the engine, mill and works, on account of such failure or violation, to be a nuisance, and thereupon to fix a liability in damages or otherwise upon the defendant, assumes the affirma-tive, and, to prevail, must establish the truth of the allegations upon which he relies.   This rule was rightly prescribed by the court in the instructions given to the jury in relation to the bur-den of proof; and the exception taken to them by the plaintiff is consequently unfounded.

While the trial was in progress, it was impossible to foresee whether the jury would ultimately find it necessary to ascertain and return their verdict for any sum in damages sustained by the plaintiff in consequence of the unlawful or unjustifiable manner in which the works of the defendant were carried on. But it is obvious that if in their deliberations they should reach that question, it would be of some importance to them, in deter-mining it, to know the general character of the neighborhood in which the plaintiff's buildings were situated, the various kinds of business carried on there, and the class of tenants by whom

dwelling-houses in that vicinity were in general, or for the most part, occupied. Hence the inquiries upon these subjects, and also as to the probable disadvantage and loss to the plaintiff from an inability to rent his houses, if, in consequence of the destruction or removal of the defendant's mills, there were no longer workmen or other persons desiring to reside in that vicinity to whom they could be leased, were properly allowed to be proposed to the several witnesses examined on those subjects. The degree of importance which should be attached to the proof of such facts, it is not necessary now to consider; it is sufficient that it had a proper bearing upon the question of damages submitted to the jury, by whom, it may be presumed, it would have been allowed only the weight to which it was justly entitled.

The proposed testimony of Mr. Sherman, the insurance secretary, was rightly rejected. Even if evidence as to the difficulty to which the plaintiff was necessarily subjected in obtaining insurance upon his houses, or that insurance could be obtained upon them only at increased rates of charge, in consequence of the existence of the works of the defendant and the manner in which they were conducted, might have been competent in support of his claim of damages, it was wholly immaterial what the company with which the witness was connected had done or refused to do. A particular company might, for reasons peculiar to itself, refuse to assume risks which would be taken without hesitation by others; and therefore the question should have been general, whether, from the knowledge of the witness as an expert, insurance, under the circumstances supposed or assumed, could or could not have been obtained by the plaintiff upon his houses, and if it could, upon what terms or rates of compensation it could have been effected. To have permitted the question proposed to the witness to be answered, would have brought into the trial a new and useless collateral issue, by making it material to ascertain and determine the reasons and motives by which the managers and conductors of a particular company were influenced in negotiating or refusing to negotiate with a particular individual on a special subject. As the

fact, if shown, could have had no legitimate effect upon the real question to be determined, the evidence offered to prove it was rightly excluded. *Exceptions overruled.*